[No. 16479-1-I. Division One. January 8, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. KEITH ALAN RATLIFF, *Appellant.*

*Neil M. Fox* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Susan Ulery, Deputy,* for respondent.

WILLIAMS, J.—Keith Ratliff was found guilty by a jury of intimidating a witness. Although the standard sentence range for this offense under the sentencing reform act, con-

sidering Ratliff's criminal history and the nature of the offense, is 15 to 20 months, Ratliff was sentenced to 40 months' imprisonment. He appeals.

On November 19, 1984, Ratliff slashed the tires of the victim's car while it was parked at a parking garage near her office. Ratliff was charged with criminal menacing by the City of Seattle. The victim was subpoenaed to testify at Ratliff's trial. On December 20, 1984, Ratliff again slashed the tires of the victim's car, this time while it was parked at her apartment. The victim then moved to a friend's houseboat. On January 2, 1985, Ratliff made an anonymous telephone call to the victim at her office, threatening to damage her car and injure her if she testified at his trial. He also indicated that he knew she had moved and where she was currently living. The next day, Ratliff called the victim at her office twice, again anonymously and again threatening to injure her if she testified. On January 14, 1985, the victim testified at Ratliff's criminal menacing trial. Ten days later, Ratliff made another anonymous telephone call to the victim threatening to injure her.

Ratliff's intimidating a witness trial was held on March 25–26, 1985. After the jury returned its verdict finding Ratliff guilty, the trial court orally ordered Ratliff to have no contact, directly or indirectly, with the victim. *See* RCW 9.94A.383; RCW 9.94A.030(4); RCW 9.94A.030(7). Ratliff continued to contact the victim, however, calling her at her office and her home in an attempt to persuade her to speak on his behalf at his sentencing. From April 23 to 27, 1985, Ratliff called the victim 10 times. Ratliff had other persons call the victim and threaten to injure her. Ratliff also wrote letters to the victim.

As the victim is a single woman living alone, Ratliff's actions greatly upset her life. She became afraid to answer her telephone or drive her car. The victim's work as an attorney was disrupted, and she was afraid to go anywhere or do anything by herself.

Ratliff was sentenced on May 14, 1985. The trial court considered Ratliff's post–trial contacts with the victim in

imposing a sentence outside the standard sentence range. The trial court found that Ratliff's conduct throughout this episode was deliberately cruel to the victim, was intended to intimidate her and cause her mental anguish, did, in fact, cause her substantial mental anguish and invaded her "zone of privacy."

RCW 9.94A.120(2) provides:

> The court may impose a sentence outside the standard sentence range for that offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence.

Review of an exceptional sentence is governed by RCW 9.94A.210(4), which provides:

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

The first issue is whether the reasons given by the trial court for imposing the exceptional sentence are supported by the record. Ratliff contends that the trial court should not have considered his post–trial conduct. Former RCW 9.94A.370 provides:

> In determining any sentence, the trial court may use no more information than is admitted by the plea agreement, and admitted to or acknowledged at the time of sentencing. Acknowledgement includes not objecting to information stated in the presentence reports. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The real facts shall be deemed proven at the evidentiary hearing by a preponderance of the evidence. Real facts that establish elements of a higher crime, a more serious crime, or additional crimes cannot be used to go outside the presumptive sentence range except upon stipulation.

At his sentencing hearing, Ratliff acknowledged that, after his trial, he sent letters to the victim and continued to

call her. This information should not have been considered by the trial court, however, because it established the additional crimes of intimidating a witness, RCW 9A.72.110, telephone harassment, RCW 9.61.230, and contempt, RCW 9.23.010(4). *See State v. Harp,* 43 Wn. App. 340, 342, 717 P.2d 282 (1986). "Real facts that establish . . . additional crimes cannot be used to go outside the presumptive sentence range except upon stipulation." RCW 9.94A.370. If the State desires to punish Ratliff for this conduct, it must institute additional criminal proceedings and obtain convictions therefor. *See* D. Boerner, *Sentencing in Washington* § 9.9, at 9–18 (1985).

Ratliff contends that his conduct was not significantly more serious than that typically involved in intimidating a witness. *See* D. Boerner §§ 9.6–9.7, at 9–13 to 9–16; *State v. Nordby,* 106 Wn.2d 514, 518 n.4, 723 P.2d 1117 (1986); *State v. Lewis,* 385 N.W.2d 352, 356–57 (Minn. Ct. App. 1986). The anonymity and repetition of the threats made by Ratliff distinguish his conduct from that of other persons convicted of this crime. *See State v. Wingard,* 92 Wash. 219, 223–24, 158 P. 725 (1916); *State v. Bringgold,* 40 Wash. 12, 21–22, 82 P. 132 (1905), *overruled on other grounds in State v. Hamshaw,* 61 Wash. 390, 112 P. 379 (1910); *State v. Pella,* 25 Wn. App. 795, 796, 612 P.2d 8 (1980); *State v. Scherck,* 9 Wn. App. 792, 794, 514 P.2d 1393 (1973). Ratliff inflicted excessive mental anguish upon the victim, much more than usually would be necessary to achieve this criminal purpose. *See State v. Blegen,* 387 N.W.2d 459, 464 (Minn. Ct. App. 1986).

Ratliff contends that the record does not support the trial court's finding that his conduct violated the victim's "zone of privacy." The second time Ratliff slashed the tires of the victim's car, it was parked at her apartment. The victim then moved, but she was not safe at her new residence because Ratliff knew where she was living. Although Ratliff's post–trial telephone calls to the victim at her home cannot be considered because they establish additional crimes, the tire–slashing incident and the fear engendered

in the victim by Ratliff's knowledge of her new residence certainly shows an invasion of the victim's private life.

 The second issue is whether the reasons given by the trial court for imposing the exceptional sentence justify that sentence. Ratliff's sentence was justified by (1) his acting with deliberate cruelty, RCW 9.94A.390; *Blegen,* at 464; (2) the severe emotional distress suffered by the victim, *State v. O'Brien,* 369 N.W.2d 525, 527 (Minn. 1985); and (3) the invasion of the victim's "zone of privacy," *State v. Dye,* 371 N.W.2d 47, 52 (Minn. Ct. App. 1985); *State v. Pierson,* 368 N.W.2d 427, 436 (Minn. Ct. App. 1985). Although not relied on by the trial court, Ratliff's lack of remorse would also be a factor justifying this sentence. *See Lewis,* at 356–57; *State v. Robinson,* 388 N.W.2d 43, 46 (Minn. Ct. App. 1986). These reasons for imposing this exceptional sentence are substantial and compelling. *See* RCW 9.94A.120(2).

The trial court should not have considered Ratliff's post–trial conduct which established additional crimes, but his conduct which was properly considered fully supports a sentence outside the standard sentence range for this offense. *See State v. Armstrong,* 106 Wn.2d 547, 550, 723 P.2d 1111 (1986).

Affirmed.

RINGOLD, A.C.J., and SWANSON, J., concur.