[No. 43285.   En Banc.   January 7, 1975.]

*In the Matter of* NINA CARSON.
CHARLES MORRIS, *as Secretary of the Department of Social
and Health Services, Petitioner,* NINA CARSON,
*Respondent.*

*Slade Gorton,* Attorney General, and *Kenneth R. Brown-stein, Assistant,* for petitioner.

*Harry L. Johnsen,* for respondent.

FINLEY, J.—Respondent Nina Carson brought this action in the Superior Court for Okanogan County to have the Okanogan Juvenile Department show cause why its wardship over her should not be terminated. The Superior Court ordered wardship terminated. We granted a petition for a writ of certiorari, and herein affirm the action of the trial court terminating the wardship of respondent Nina Carson.

The issue is whether an individual committed to the Department of Social and Health Services, Division of Institutions, as a dependent incorrigible by the juvenile court while under the age of 18 is subject to the continuing jurisdiction of the juvenile court and the Division of Institutions after attaining age 18.

The facts are: On April 16, 1973, respondent Nina Carson was declared to be a dependent incorrigible by the Ferry County Juvenile Court pursuant to RCW 13.04.010(7)[1] and was made a ward of the State. Shortly thereafter, she was committed to the Division of Institutions pursuant to RCW 13.04.190[2] and placed in Maple Lane School. On December 6, 1973, respondent attained age 18. She was subsequently given a furlough from Maple Lane School but did not return on schedule. Jurisdiction of her case was transferred to Okanogan County, and she was temporarily placed in the custody of the Juvenile Probation Office of the Colville Confederated Tribes. The above-mentioned action and order to show cause ensued.

From some of the prior decisions of this court, it is left uncertain whether it is the status of *minority* or a legislatively specified *age* that serves as the outer limits for the assertion of jurisdiction over an individual by the juvenile

---

[1]"This chapter shall be known as the 'Juvenile Court Law' and shall apply to all minor children under the age of eighteen years who are delinquent or dependent; and to any person or persons who are responsible for or contribute to, the delinquency or dependency of such children.

"For the purpose of this chapter the words 'dependent child' shall mean any child under the age of eighteen years:

". . .

"(7) Who is incorrigible; that is, who is beyond the control and power of his parents, guardian, or custodian by reason of the conduct or nature of said child; . . ." RCW 13.04.010(7).

[2]"Any boy or girl between the ages of eight and eighteen years who has been found delinquent by the juvenile court may be committed by the juvenile court to the department of institutions, for institutional placement in such reception diagnostic center, or other juvenile correctional facility under the supervision of the department of institutions as shall be designated by the director of the department of institutions: . . ." RCW 13.04.190.

court. *See In re Lundy*, 82 Wash. 148, 143 P. 885 (1914); *In re Gilder*, 98 Wash. 514, 167 P. 1093 (1917). In each case, there was some discussion of Laws of 1913, ch. 160, § 10, p. 527, which provided that in no event should commitment extend beyond age 21. In overly broad dicta, the court seemed to imply that this provision authorized the juvenile court to retain jurisdiction over an individual as long as he or she is under the legislatively specified age of 21, even if that individual had attained majority status.

However, close scrutiny of the facts in each case demonstrates that the individual involved was still a minor *for purposes of juvenile court jurisdiction*. In *Lundy*, a female of 17 married a 32-year-old male. Code of 1881, § 2364 provided that females married to persons of full age would also be deemed to be of full age. This court stressed that section 2364 did not remove the female's disability for all purposes and then construed section 2364 as removing *only common-law disabilities*. The juvenile court was therefore allowed to retain its jurisdiction over the married female.

In *Gilder*, Code of 1881, § 2363 provided that males were deemed of full age at 21 *for all purposes*; females were deemed of full age at 18, but significantly, the statute did not state "for all purposes" as it did for males. This court held that the juvenile court could retain jurisdiction over the female until age 21 if necessary.

It was thus implicit in both *Lundy* and *Gilder* that, *for purposes of juvenile court jurisdiction*, the females involved would not attain majority status until age 21, although for other purposes, they had achieved certain incidents of majority at an earlier age. We think the reasoning of the court was highly strained to the extent that it implied that the jurisdiction of the juvenile court could be exercised over an individual beyond the age of majority. The better reasoning and result would be that the juvenile court may exercise jurisdiction only over *minors*, any implications in *Lundy* or *Gilder* to the contrary notwithstanding.

Actually, the legislature could grant some incidents of majority status at one age and other incidents at another age.[3] The question to be resolved is whether RCW 26.28.010, which generally confers majority at age 18, also does so in regard to juvenile court jurisdiction, or whether, as in *Lundy* and *Gilder*, majority in terms of termination of juvenile court jurisdiction is attained only at age 21. The question is solely one of statutory construction.

RCW 26.28.010 provides:

> Except as otherwise *specifically* provided by law, *all* persons shall be deemed and taken to be of full age *for all purposes* at the age of eighteen years.

(Italics ours.)

In contrast to the age of majority statutes involved in *Lundy* and *Gilder*, in RCW 26.28.010 it is patent that one attains the status of majority *for all purposes* at age 18, with one exception: namely, if another statute *specifically* provides otherwise. It follows that for purposes of juvenile court jurisdiction, majority is attained at age 18 and is not deferred until some later date unless there is a *specific* contrary statutory provision.

The State urges that the requisite specific contrary provision is found in RCW 13.04.095:

> When any child shall be found to be delinquent or dependent, within the meaning of this chapter, the court shall make such order for the care, custody, or commit-

---

[3]However, substantial problems would arise in one narrow instance. At present, RCW 13.04.010 gives original jurisdiction to the juvenile court only with respect to individuals under the age of 18. If the legislature raised the age of majority to 21 for purposes of retaining jurisdiction, then an anomaly would arise with respect to individuals who were not originally committed for the commission of any crime, but rather, only because they were deemed incorrigible, *i.e.*, beyond the control of their parents. The result would be that the juvenile court would be empowered to continue to incarcerate an individual after 18 for behavior committed prior to age 18, which behavior if committed by other individuals who had attained age 18 would not be grounds for deprivation of liberty by any court, juvenile or otherwise. This would raise serious due process and equal protection questions.

ment of the child as the child's welfare in the interest of the state require. . . .

. . .

*In no case shall a child be committed beyond the age of twenty-one years.*

(Italics ours.)

We are convinced that the italicized negative language is too remote in terms of time of enactment and viability to be considered as an exception "specifically provided by law" to the main thrust of RCW 26.28.010. That main thrust is that *"all* persons shall be deemed *and taken to be of full age for all purposes* at the age of eighteen years." (Italics ours.) Moreover, when a deprivation of liberty is involved, statutes should be strictly construed. *Weber v. Doust*, 81 Wash. 668, 143 P. 148 (1914). Counterbalanced against these considerations, the State makes two arguments. First, that repeal by implication is not favored in the law, *State Welfare Rights Organization v. State*, 82 Wn.2d 437, 511 P.2d 990 (1973), and to hold that the jurisdiction of the juvenile court ends at age 18 would necessarily repeal RCW 13.04.095 by implication. This contention rests upon a misconception of the original purpose of RCW 13.04.095. It was originally enacted at a time when, for purposes of juvenile court jurisdiction, the age of majority was 21. It was thus intended to be an explicit limitation on the duration for which a juvenile could be committed, coinciding with the age of majority at 21 years prescribed for males by the existing legislation. As we have previously indicated, this provision was not, in and of itself, a grant of jurisdiction to the juvenile court, nor was *this* provision responsible for postponing majority status until age 21 for purposes of juvenile court jurisdiction. That postponement resulted from a construction of the age of majority statutes then in force. Accordingly, we would repeal nothing if now at this later date we refuse to give force to that outmoded statutory provision of RCW 13.04.095 which, according to the State's contention, would require that for purposes of

juvenile court jurisdiction a juvenile attains majority only at age 21.

■ Secondly, the State asserts that RCW 26.28.010 alters only the parent/child relationship at age 18 and that once an individual has become a ward of the court, the State/child relationship is unaffected by the attainment of age 18. We are not persuaded, for the simple effect of commitment by the juvenile court is to put the State *in the place of* the parent. Thus, attainment of majority has the same impact upon the State as it does upon the parent. In both cases, authority over the individual ceases at the age of 18.

On balance, then, we believe that because there is no explicit statutory provision to the contrary, we must hold that majority status is conferred at age 18 for purposes of juvenile court jurisdiction. Thereafter, the juvenile court had no jurisdiction over Nina Carson.

The judgment of the trial court should be affirmed. It is so ordered.

HALE, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

STAFFORD, J., concurs in the result.

Petition for rehearing denied April 3, 1975.