IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31402-2-III |
| Respondent, | ) | Consolidated with |
| | ) | No. 31404-9-III |
| v. | ) | |
| | ) | |
| NANAMBI IBO GAMET, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Nanambi Gamet challenges his convictions for felony violation of a protection order (eight counts) and witness tampering on several grounds, including claims of instructional error. We agree only with his contention that an excessive term of community custody was imposed and remand the matter to strike that provision.

FACTS

Mr. Gamet dated S.C. for a 13 year period. In April 2010, he was convicted of third degree assault, domestic violence, against S.C. Over the objections of S.C., the trial court entered a protective order prohibiting contact between her and Mr. Gamet.

Mr. Gamet was jailed in May 2012 on unrelated topics. While in the Yakima County Jail, he used the Inmate Calling Services (ICS) to place telephone calls. ICS records all calls placed through its service. A review of those recordings revealed that

No. 31402-2-III; consolidated with No. 31404-9-III
*State v. Gamet*

Mr. Gamet was calling S.C. Those phone calls eventually led to the filing of eight felony

counts of violation of a protection order for calls placed in May and June.[1]

Aware of the new charges, Mr. Gamet in August mailed S.C. a letter addressed to

her niece, Ms. Prado. He then called Ms. Prado and advised her that the letter, although

addressed to Ms. Prado, was for S.C. to read. The letter was mailed to a postal box

maintained by S.C.'s mother. Alerted by the phone call, a detective contacted S.C.'s

mother and secured her cooperation. When the letter arrived, it was turned over to the

detective.

In relevant part, the letter stated:

> Well, about [S.C.], she needs just to hang up every time and not
> show up to anything anytime, anyplace. I'm going to trial soon. They have
> until the 4th of next month. I hope she just hangs up on them and I don't
> know why she even told them to take subpoena to her sisters. The point is
> to have zero contact if she doesn't want to cooperate, zero.
> It's very hard for me to deal with these emotions because she
> showed last time. If she does that again, I'm forced to go to trial. I hope
> and pray she doesn't say a single word to them and hang up every time. . . .
> I know what I'm doing. I don't need her thinking she can help me by
> talking to them. She only hurts me and herself because one thing I do know
> in this confusing world is she loves me and I love her, too. . . . They have to
> let me go if she don't show.

Report of Proceedings (RP) at 710-11. The letter led the prosecutor to add the charge of

witness tampering.

---

[1] The charges were filed as felony counts due to prior convictions in 2003 and 2004 for violation of a protective order.

2

At trial, the prosecution played the recordings of the phone calls that supported the eight protection order violation counts, as well as two later jail phone calls that were not charged. The defense objected to the two uncharged calls on several bases, but the court admitted them to establish the identity of the earlier callers and show a common scheme or plan to persuade S.C. not to cooperate with the prosecution. The court also admitted the judgment and sentence as well as a docket printout to establish the two prior convictions for violation of a protection order. Exs. 14, 15.

The jury found Mr. Gamet guilty on all nine counts. Despite competing requests by both sides for an exceptional sentence, the court imposed concurrent standard range sentences of 60 months on each count. The court also imposed a concurrent term of 12 months of community custody on all counts. Mr. Gamet then timely appealed to this court.

## ANALYSIS

This appeal challenges the court's ruling on the uncharged telephone calls, the admission of the prior convictions, the sufficiency of the evidence to support the witness tampering count, the validity of the elements instruction on the witness tampering count, and the imposition of community custody.[2] We address the issues in the order stated.

---

[2] Mr. Gamet also filed a lengthy statement of additional grounds. We will not address those claims. Most of them are not cognizable or are otherwise inadequate for our consideration. RAP 10.10(c). Of those claims we can identify, they are either without merit, were adequately addressed by counsel (*see* RAP 10.10(a)), or are rendered moot by our remand for resentencing.

No. 31402-2-III; consolidated with No. 31404-9-III
*State v. Gamet*

*Uncharged Telephone Calls*

Mr. Gamet argues in this court that the court violated ER 404(b) by failing to give a limiting instruction concerning the two uncharged telephone calls. He did not argue that theory below and cannot do so now. Nonetheless, the court also did not abuse its discretion in declining to give a limiting instruction.

Relying upon ER 401, ER 403, and ER 802, Mr. Gamet challenged the admission of the recordings of the two uncharged telephone calls in the trial court. RP at 253. The prosecutor responded that the evidence was relevant to all the charges—the phone calls showed the identity of the speakers in the earlier telephone calls and also showed the defendant's "common scheme" to tamper with S.C. RP at 278-79. The court ordered excision of various statements in the recordings that were prejudicial. RP at 281-83. In response to the prosecutor's common scheme argument for relevancy on the tampering charge, defense counsel argued that the evidence was not relevant to a crime that had not been committed yet and raised the risk of undue confusion of the jury. He therefore asked for a limiting instruction that would tell the jury the tapes were not being offered for the truth of the matters asserted therein and could not be the basis for a tampering conviction. RP at 289-90. The trial court decided that a limiting instruction was unnecessary as the jury would be instructed on the dates of the witness tampering and would not be able to rely upon the earlier telephone calls to convict the defendant on that charge. RP at 291-92.

4

The standards governing evidentiary challenges are well understood. Evidence that is relevant is admissible. ER 401; ER 402. However, admissible evidence can be excluded when its relevance is substantially outweighed by its prejudicial impact. ER 403. In addition, evidence of "other bad acts" cannot be used as evidence of a person's bad character, but can be admitted for such other purposes as establishing a "common scheme or plan." ER 404(b). A trial court's evidentiary rulings are reviewed for abuse of discretion. *State v. Guloy*, 104 Wn.2d 412, 429-30, 705 P.2d 1182 (1985). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). An erroneous evidentiary ruling is not prejudicial "unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980).

Mr. Gamet attempts to argue this as an ER 404(b) case.[3] That was not his theory below. There he tried to exclude the evidence on relevance, confusion, and hearsay grounds. These bases implicate ER 401, ER 403, and ER 802. The failure to raise an evidentiary objection to the trial court waives the objection. *Guloy*, 104 Wn.2d at 422; *State v. Boast*, 87 Wn.2d 447, 451-52, 553 P.2d 1322 (1976). As explained in *Guloy*:

---

[3] Defense counsel did cite ER 404(b) in a pretrial memorandum that addressed other issues, but did not expressly apply that theory to his arguments against use of these two recordings.

> A party may only assign error in the appellate court on the specific ground
> of the evidentiary objection made at trial. Since the specific objection
> made at trial is not the basis the defendants are arguing before this court,
> they have lost their opportunity for review.

104 Wn.2d at 422 (citation omitted).

Accordingly, Mr. Gamet may not pursue his ER 404(b) argument in this appeal. If the matter is analyzed under ER 403, as the trial court did, we conclude that there was no abuse of discretion in declining a limiting instruction. The evidence was introduced for multiple purposes. First, it was introduced to tie together the identity of the speakers in the early conversations that were the subject on the protection order violation charges. It also showed the defendant's mindset and determination to convince S.C. not to participate. Accordingly, the recordings were relevant for multiple purposes and an instruction limiting the evidence to one purpose was improper.

With respect to the defense argument that the jury might be confused and convict on the basis of the telephone calls rather than the letter, the trial court correctly pointed out that the elements instruction would define the dates of the offense and, thus, limit the jury to the letter as the basis for the tampering offense. In that circumstance, there was no need to further instruct the jury that the two recordings could not be the basis for a conviction. The court's reason for rejecting the limiting instruction was tenable.

Mr. Gamet waived any ER 404(b) argument by not raising it at trial. The trial judge also did not abuse his discretion in determining that a limiting instruction was unnecessary.

6

No. 31402-2-III; consolidated with No. 31404-9-III
*State v. Gamet*

*Use of Prior Convictions*

Making a reverse-*Blakely*[4] argument, Mr. Gamet contends that the trial court erred in allowing his prior convictions before the jury. At oral argument to this court, his counsel explained that this argument was made in anticipation of the United States Supreme Court changing its jurisprudence. In light of the fact that this argument currently is precluded by existing authority, we will address it only briefly.

The essence of the argument is that because the existence of a prior conviction does not have to be proven to the jury, it cannot and should not be submitted to the jury. This argument is foreclosed by the decisions in *State v. Roswell*, 165 Wn.2d 186, 196 P.3d 705 (2008), and *State v. Oster*, 147 Wn.2d 141, 52 P.3d 26 (2002).

In *Oster*, a felony no contact order prosecution, the court ruled that the prior convictions functioned "as an element of the" crime. 147 Wn.2d at 146. Although the jury needed to find the existence of the prior offenses beyond a reasonable doubt, it was permissible to have the jury make this finding by a special verdict form rather than include them in the elements instruction. *Id.* at 146-47.

In *Roswell*, a prosecution for communication with a minor for immoral purposes, the court squarely rejected a reverse-*Blakely* argument. 165 Wn.2d at 193-94. Specifically, the court ruled that a trial judge did not have to permit the defense to waive a jury finding of the existence of a prior conviction in favor of a judicial finding. *Id.* at 197-98.

---

[4] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

7

As in *Oster*, here the existence of the prior convictions was properly put before the jury as an element of the protection order counts. As in *Roswell*, the trial court was not required to take this element away from the jury.

The trial court did not err in its elements instructions on the violation of a protection order counts.

*Sufficiency of Evidence of Witness Tampering*

Mr. Gamet also argues that the evidence did not support the jury's verdict on the witness tampering count. The evidence did permit the jury to find each element of the offense and, thus, was sufficient to support the conviction.

Again, well settled standards govern appellate review of the sufficiency of the evidence to support a conviction. Appellate courts look to see if there was evidence from which the trier of fact could find each element of the offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Id.* Reviewing courts also must defer to the trier of fact "on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). "Credibility determinations are for the trier of fact and are not subject to review." *Id.* at 874.

Mr. Gamet argues that the evidence is insufficient because it does not show that he induced S.C. to be uncooperative and was similar to the behavior found inadequate to support a conviction in a prior case. We disagree.

The crime of witness tampering is found in RCW 9A.72.120. It states in relevant part:

> (1) A person is guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding or a person whom he or she has reason to believe may have information relevant to a criminal investigation . . . to:
> (a) Testify falsely or . . . to withhold testimony; or
> (b) Absent himself or herself from such proceedings; or
> (c) Withhold from a law enforcement agency information which he or she has relevant to a criminal investigation . . . .

Mr. Gamet was charged under all three prongs of the statute except for the "testify falsely" alternative of RCW 9A.72.120(1)(a). Clerk's Papers at 143.

As indicated in the statute, a person tampers with a witness if he *attempts* to alter the witness's testimony. "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1). This court "may infer specific criminal intent from conduct that plainly indicates such intent as a matter of logical probability." *State v. Andrews*, 172 Wn. App. 703, 707, 293 P.3d 1203 (2013) (citing *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004)).

9

Mr. Gamet argues that S.C. was uncooperative of her own accord and his letter did not influence her. He relies in part on the decision in *State v. Rempel*, 114 Wn.2d 77, 785 P.2d 1134 (1990). There the defendant contacted the victim in an attempted rape prosecution and asked her to drop charges, accused him of doing something he did not do, and told her the charges were ruining his life. *Id.* at 81-82. The prosecutor filed a count of witness tampering. The jury convicted him of that crime. *Id.* at 79.

The Supreme Court found the noted evidence insufficient, determining that the defendant's statements did not amount to an inducement to withhold testimony. *Id.* at 83-84. The court expressly distinguished the facts in *Rempel* from earlier cases where inducement was established. *Id.* at 84 (distinguishing *State v. Stroh*, 91 Wn.2d 580, 588 P.2d 1182 (1979) (defendant asked the witness not to appear or alternatively to change his testimony); *State v. Wingard*, 92 Wash. 219, 158 P. 725 (1916) (defendant promised a reward, made a threat, and urged the witnesses to ignore a subpoena); *State v. Scherck*, 9 Wn. App. 792, 514 P.2d 1393 (1973) (defendant asked the witness to drop the charges, urged him to refuse to appear, and made a threat)).

This case is distinguishable from *Rempel*. Unlike that case, Mr. Gamet managed to meet all three of the charged prongs of the statute. In the letter to S.C., he indirectly urges S.C. not to cooperate with authorities, not to show up to any investigative meetings or speak to the investigators on the phone, and also not to show up to his trial. Specifically, the letter asserts that S.C. "needs just to hang up every time and not show up to anything

10

anytime, anyplace," and "[t]he point is to have zero contact if she doesn't want to cooperate, zero." RP at 710. Mr. Gamet also urged S.C. not to show at his trial, asserting that the authorities have to let him go if she does not show. RP at 711. Although Mr. Gamet did not attempt to threaten S.C. or bribe her with money or goods, he did attempt to induce her through the letter to withhold testimony, absent herself from proceedings, and withhold from a law enforcement agency information relevant to a criminal investigation.

The fact that S.C. was inclined not to cooperate does not detract from the fact that Mr. Gamet attempted to induce her to not cooperate. The letter permitted the jury to find each element of the crime of witness tampering. The evidence was sufficient to support the verdict on the tampering charge.

*Jury Instruction on Witness Tampering*

Mr. Gamet also argues that the witness tampering elements instruction was defective by failing to include statutory language "without right or privilege to do so." Because Mr. Gamet was not harmed by the missing language, this argument is without merit.

The language in question comes from the first prong of the statute, which states in pertinent part:

> (1) A person is guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding or a person whom he or she has reason to believe may have information relevant to a criminal investigation or the abuse or neglect of a minor child to:

11

(a) Testify falsely or, *without right or privilege to do so*, to withhold any testimony; . . . .

RCW 9A.72.120 (emphasis added).

The related pattern instructions for this offense—WPIC 115.80 and 115.81[5]— outline the elements for the crime of witness tampering, and brackets the language "without right or privilege to do so," instructing that such bracketed language be used "as applicable."[6] Neither the elements instruction nor the definitional instruction used in this case contained the challenged language. CP at 61, 63.

The court and parties discussed the language at some length during the jury instruction conference, debating whether it modified the "testify falsely" or the "withhold testimony" alternatives, whether the privilege involved belonged to the defendant or the witness, and whether the language stated an affirmative defense or was an element the

---

[5] 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 115.80 and 115.81, at 441-42 (3d ed. 2008).

[6] There is no guidance contained within the legislative history related to RCW 9A.72.120 regarding whether the prepositional phrase in question was meant as an affirmative defense or as an element to be proven in each case involving witness tampering by way of attempting to induce a witness to withhold testimony. Case law describes the phrase as pertaining to a legal privilege or right, such as the Fifth Amendment right to remain silent, spousal testimonial privilege, or marital communications privilege. *See, e.g., State v. Sanders*, 66 Wn. App. 878, 833 P.2d 452 (1992) (discussing spousal testimonial and martial communications privilege applying in witness tampering case); *State v. Ahern*, 64 Wn. App. 731, 826 P.2d 1086 (1992) (discussing that an attorney who advised his client of his Fifth Amendment right not to testify would not be subject to witness tampering under the clause).

No. 31402-2-III; consolidated with No. 31404-9-III
*State v. Gamet*

State needed to prove. RP at 781-88. Determining that there was no claim of privilege at issue in the case, the court declined to require the language in the instructions. We need not resolve the debate whether the challenged phrase is an element of the crime or an affirmative defense, because even if the phrase is an element of the crime, its absence from the jury instructions in this case was harmless beyond a reasonable doubt.

Omission of an element from a "to-convict" instruction is harmless error if it is clear beyond a reasonable doubt that the error did not contribute to the verdict. *Neder v. United States*, 527 U.S. 1, 15, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)); *State v. Thomas*, 150 Wn.2d 821, 840-41, 83 P.3d 970 (2004). That is the situation here. Mr. Gamet never contended that he was privileged to attempt to dissuade S.C. from cooperating with the prosecution of the case against him.

If the privilege language is an element of the offense, it was not an element at issue in this case. Accordingly, if there was any error, it was harmless beyond a reasonable doubt.

*Community Custody Term*

Both parties agree that the trial court erred in imposing a term of community custody because the defendant had already been sentenced to the maximum term of incarceration. We agree. Both parties ask that the matter be remanded for resentencing where they can

13

renew their arguments for an exceptional sentence. We disagree with that remedy and, instead, remand for the court to strike the term of community custody.

The combined term of incarceration and community custody cannot exceed the statutory maximum sentence for the offense. Both witness tampering and violation of a protection order are class C felonies. RCW 9A.72.120(2); RCW 26.50.110(5). The maximum sentence for a class C felony is five years of incarceration. RCW 9A.20.021(1)(c). In the instance when the combined terms of incarceration and community custody exceed the statutory maximum, the legislature has provided that the "term of community custody . . . shall be reduced by the court." RCW 9.94A.701(9).

Because the trial court has no discretion in this circumstance, absent use of the exceptional sentence power that the trial judge already eschewed, the only remedy available on remand would be to strike the community custody term. That is typically the remedy we would order.

The parties desire resentencing, which would occur before a different judge due to Judge Gavin's retirement. However, trial courts lack authority to resentence a defendant absent a basis for reopening a judgment. *State v. Shove*, 113 Wn.2d 83, 87-88, 776 P.2d 132 (1989). A request for resentencing from a party is an insufficient reason to set aside a judgment. *Id.* Accordingly, we see no basis to depart from our customary practice.

The convictions are affirmed. The case is remanded with directions to strike the term of community custody.

14

No. 31402-2-III; consolidated with No. 31404-9-III
*State v. Gamet*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, J.

_____
Siddoway, C.J.